UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:19-cv-03339

FRED NEKOUEE, individually,  :
: 
        Plaintiff,  :
:
vs.  :
:
TKG BOULDER MARKET SQUARE, L.L.C.,  :
a Missouri limited liability company;  :
:
and  :
:
PETSMART, INC., a Delaware limited liability  :
company;  :
:
        Defendants.  :
_____/

**COMPLAINT**
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, as a mobility impaired individual (sometimes referred to as "Plaintiff"), hereby sues the Defendants, TKG BOULDER MARKET SQUARE, L.L.C., a Missouri limited liability company; and PETSMART, INC., a Delaware limited liability company (sometimes referred to as "Defendants"); for injunctive relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1.    Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County of Hillsborough.

2.    Defendant TKG BOULDER MARKET SQUARE, L.L.C. owns the Market Square Shopping Center at 1830-1850 30th Street, Boulder, Colorado 80301, in Boulder County ("Market

Square").

3.    Defendant PETSMART, INC.'s store is located in the Market Square ("Petsmart") with an address of 1850 30th Street, Suite B, Boulder, Colorado 80301.

4.    Venue is proper in the District of Colorado because venue lies in the judicial district of the situs of the Market Square.  The Defendants' Market Square and Petsmart are located in and do business within this judicial district.

5.    Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendants' violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   See also 28 U.S.C. § 2201 and § 2202.

6.    Defendants each own, lease, lease to, or operate a place of public accommodation as defined by the ADA, 42 U.S.C. § 12181(7)(E), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104.

7.    The Market Square is a shopping center.

8.    The Market Square is a place of public accommodation.

9.    Michaels in the Market Square is a place of public accommodation.

10.   Walgreens in the Market Square is a place of public accommodation.

11.   Petsmart is a place of public accommodation.

12.   Defendants are each responsible for complying with the obligations of the ADA.

13.   Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.  Fred Nekouee has progressive multiple sclerosis, weak limbs, and requires the use of a wheelchair for mobility.

14.   Mr. Nekouee travels to the Longmont-Firestone-Boulder area every three to six months to accompany his brother at heavy equipment auctions and to visit heavy equipment

dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment, or to vacation.

15. Fred Nekouee has visited the Market Square which forms the basis of this lawsuit on October 1, 2019; February 5, 2019; and October 4, 2018; and he bought goods and sought to avail himself of the goods and services at the Market Square on such dates.

16. Fred Nekouee visited and bought goods at Michaels February 5, 2019.

17. Fred Nekouee visited and bought goods at Walgreens in the Market Square on October 4, 2018; February 5, 2019; and October 1, 2019.

18. Fred Nekouee visited Petsmart and bought goods there on October 1, 2019; and on October 4, 2018.

19. Fred Nekouee attended a heavy equipment auction in the Longmont area on October 3, 2018; May 8, 2019; and October 2, 2019.

20. Fred Nekouee visited Rocky Mountain National Park on October 2, 2018.

21. Fred Nekouee also visited the Longmont, Colorado area from February 3-7, 2019.

22. Fred Nekouee plans to return to the Market Square to avail himself of the goods and services offered to the public at the Market Square, Michaels, Walgreens and Petsmart.

23. The Plaintiff has definite plans to return to the area and to the Market Square, Michaels, Walgreens and Petsmart in December 2019 or February of 2020.

24. The Market Square, Michaels, Walgreens, and Petsmart are close to the hotels he stays at in the area and are close to the heavy equipment auction and dealerships he visits.

25. The Plaintiff likes the broad range of goods for sale at Michaels in the Market Square.

26. The Plaintiff plans to return to Michaels to shop.

27. The Plaintiff likes to shop at Walgreens for health and personal hygiene items.

28. The Plaintiff plans to return to Walgreens to shop.

29. The Plaintiff likes the goods at Petsmart for the pets of his relatives and friends.

30. The Plaintiff plans to return to Petsmart.

31. For the reasons set forth in paragraphs 14-30 and 43, Fred Nekouee plans to return to the Market Square and to Walgreens, Michaels and Petsmart.

32. The Plaintiff has encountered architectural barriers at the Market Square.

33. The barriers to access that the Plaintiff encountered at the Market Square have endangered his safety, impaired his ability or those accompanying him to park a vehicle, impaired his ability to access the Market Square, and have impaired his use of the restrooms there.

34. The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

35. The Plaintiff cannot move up steep inclines or down steep slopes in his wheelchair because he lacks the strength and also risks tipping his wheelchair backwards or forwards.

36. Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair and such excessively steep slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair.

37. On his visit to Market Square, the Plaintiff encountered excessively steep slopes in its parking lot.

38. The cross slopes of the walking surfaces along the accessible route to Michaels and to Walgreens are steeper than 1:48 and also steeper than 3.1%.

39. The Plaintiff encountered and observed that the drain and water supply pipes under the sink in the men's restroom in Michaels are not fully insulated.

40. The Plaintiff encountered and observed barriers to access in the men's restroom in Petsmart; and so, he also tried to use the women's restroom in Petsmart, in which women's restroom he also encountered and observed barriers to access.

41. The Plaintiff is deterred from visiting the Market Square even though he enjoys its goods, because of the difficulties he will experience there until the Market Square is made accessible to him in a wheelchair.

42. Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendants' non-compliance with the ADA with respect to the Market Square as described but not necessarily limited to the allegations in paragraph 48 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendants.

43. Fred Nekouee desires to visit the Market Square not only to avail himself of the goods and services available at the Market Square but to assure himself that the Market Square is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the Market Square without fear of discrimination.

44. The Defendants have discriminated against the individual by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the building, as prohibited by 42 U.S.C. § 12182 et seq.

45. The Defendants have discriminated, and are continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

46. Physical conditions that exist at the Market Square are accurately described in each

romanette "(i)" in each lettered subparagraph of paragraph 48 below

47.     Preliminary inspections of the Market Square show that violations of the ADA exist as set forth in paragraph 48 below.

48.     The violations of the ADA that Fred Nekouee personally encountered or observed at the Market Square include, but are not limited to:

**PARKING**

a. (i) In the parking lot, there are no parking spaces for disabled patrons in front of Walgreens with signage that contains the words "van accessible."  (ii) This lack of van accessible signage is in violation of Federal Law 2010, ADAAG §§ 208.2.4 and 502.6. (iii) The Plaintiff observed this lack of van accessible signage, and it made it difficult for him to find a suitable parking space, and it deters him from visiting the Market Square. (iv) The action required to install van accessible signage is easily accomplishable and able to be carried out without much difficulty or expense.

b. (i) In the parking lot, there are no parking spaces for disabled patrons in front of Michaels with signage that contains the words "van accessible."  (ii) This lack of van accessible signage is in violation of Federal Law 2010, ADAAG §§ 208.2.4 and 502.6. (iii) The Plaintiff observed this lack of van accessible signage, and it made it difficult for him to find a suitable parking space, and it deters him from visiting Michaels.  (iv) The action required to install van accessible signage is easily accomplishable and able to be carried out without much difficulty or expense.

c. (i) In the parking lot, the parking space for disabled patrons in front of Walgreens is not level and its front section (oriented closer to the curb) has a running slope steeper than 1:48 and steeper than 3.1%.  (ii) The parking space for disabled patrons in front of

Walgreens is not level and its front section has a running slope that is steeper than 1:48 and steeper than 3.1%, in violation of Federal Law 2010, ADAAG § 502.4.  (iii) The Plaintiff encountered these conditions in this parking space and they made his wheelchair unstable. (iv) The action required to reduce the change in level and the slope of this parking space is easily accomplishable and able to be carried out without much difficulty or expense.

    d.    (i) The walking surface in front of Walgreens has a change of level greater than 0.5 inches.  (ii) The walking surface in front of Walgreens has a change of level greater than 0.5 inches, in violation of Federal Law 2010, ADAAG § 303.2.  (iii) While moving in his wheelchair, the Plaintiff encountered this change in level and it caused his wheelchair to stop and made his wheelchair unstable.  (iv) The action required to reduce the change in level of this walking surface is easily accomplishable and able to be carried out without much difficulty or expense.

    e.    (i) The cross slope of the walking surface in front of Walgreens is steeper than 1:48 and steeper than 3.1%.  (ii) The cross slope of this walking surface is steeper than 1:48 and steeper than 3.1%, in violation of Federal Law 2010, ADAAG § 403.3.  (iii) The Plaintiff encountered this cross slope while moving in his wheelchair and it made his wheelchair unstable.  (iv) The action required to reduce the cross slope of this walking surface is easily accomplishable and able to be carried out without much difficulty or expense.

    f.    (i) The cross slope of the walking surface in front of Michaels is steeper than 1:48 and steeper than 3.1%.  (ii) The cross slope of this walking surface is steeper than 1:48 and steeper than 5%, in violation of Federal Law 2010, ADAAG § 403.3.  (iii) The Plaintiff encountered this cross slope while moving in his wheelchair and it made his

wheelchair unstable.  (iv) The action required to reduce the cross slope of this walking surface is easily accomplishable and able to be carried out without much difficulty or expense.

g.   (i) The running slope of the access ramp in front of Michaels is steeper than 1:12 and steeper than 9%.  (ii) The running slope of this access ramp is steeper than 1:12 and steeper than 9%, in violation of Federal Law 2010, ADAAG § 405.2.  (iii) The Plaintiff encountered this access ramp while moving in his wheelchair, and it made his wheelchair unstable.  (iv) The action required to reduce the slope of this access ramp is easily accomplishable and able to be carried out without much difficulty or expense.

**MEN'S RESTROOM IN MICHAELS**

h.  (i) In the men's restroom in Michaels, the drain and water supply pipes under the sink are not fully insulated.   (ii) These drain and water supply pipes are not fully insulated, in violation of Federal Law 2010, ADAAG § 606.5.  (iii) The Plaintiff used this sink, and due to the lack of insulation of the drain and supply pipes under this sink, the Plaintiff risked skin burns and injury to his legs.  (iv) The action required to fully insulate these drain and supply pipes is easily accomplishable and able to be carried out without much difficulty or expense.

**MEN'S RESTROOM IN PETSMART**

i.   (i) The force needed to open the entrance door to the men's restroom in Petsmart is greater than 5 pounds.  (ii) The force needed to open the entrance door to the men's restroom in Petsmart is about 8 pounds and more than the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.  (iii) Due to the force

8

necessary to open this door, the Plaintiff had difficulty opening this door to enter the men's restroom in Petsmart.   (iv) The action required to reduce the force necessary to fully open this door is easily accomplishable and able to be carried out without much difficulty or expense.

    j.   (i) In the men's restroom in Petsmart, a door pull is not provided on both sides of the door near the latch to the accessible toilet compartment.   (ii) A door pull is not provided on both sides of the door near the latch to the accessible toilet compartment, in violation of Federal Law 2010, ADAAG § 604.8.1.2.   (iii) Due to the lack of a door pull on both side of the door to the accessible toilet compartment, the Plaintiff had difficulty operating the door.   (iv) The action required to install a door pull on both side of the door is easily accomplishable and able to be carried out without much difficulty or expense.

    k.   (i) In the accessible toilet compartment in the men's restroom in Petsmart, the rear wall grab bar does not extend 12 inches minimum on one side from the centerline of the toilet and 24 inches minimum from the other side from the centerline of the toilet.   (ii) The position of this rear wall grab bar is in violation of Federal Law 2010, ADAAG § 604.5.2. (iii) Due to the position of this rear wall grab bar, the Plaintiff had difficulty using it to transfer himself from his wheelchair to the toilet.   (iv) The action required to relocate this rear wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

    l.   (i) In the men's restroom in Petsmart, the centerline of the where the toilet paper is dispensed from the toilet paper dispenser is not between 7 and 9 inches from the front of the toilet.   (ii) The centerline of where the toilet paper is dispensed from the toilet paper dispenser is not between a minimum of 7 inches and a maximum of 9 inches from the front

of the toilet, in violation of Federal Law 2010, ADAAG § 604.7.  (iii) Due to the location of where toilet paper is dispensed, the Plaintiff could not reach toilet paper from this dispenser from a normal sitting position on the toilet.  (iv) The action required to install a dispenser so that the centerline of where the toilet paper is dispensed is between 7 and 9 inches from the front of the toilet is easily accomplishable and able to be carried out without much difficulty or expense.

m.  (i) In the men's restroom in Petsmart, the coat hook is higher than 48 inches above the floor.  (ii) This coat hook is higher than 48 inches above the finish floor and is as high as about 66 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.4.  (iii) The Plaintiff observed the height of this coat hook above the floor, and it deters him from shopping at Petsmart.  (iv) The action required to relocate this coat hook is easily accomplishable and able to be carried out without much difficulty or expense.

n.  (i) In the men's restroom in Petsmart, the liquid soap dispenser outlet is higher than 48 inches above the floor.  (ii) The outlet to this liquid soap dispenser is higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.1.  (iii) Due to its height above the floor, from his wheelchair, the Plaintiff could not obtain soap from this outlet on his own.  (iv) The action required to relocate this liquid soap dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

**WOMEN'S RESTOOM IN PETSMART**

o.  (i) The force needed to open the entrance door to the women's restroom in Petsmart is greater than 5 pounds.  (ii) The force needed to open the entrance door to the women's restroom in Petsmart is about 10 pounds and more than the maximum allowed

force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   (iii) Due to the force necessary to open this door, the Plaintiff had difficulty opening this door to enter the women's restroom in Petsmart.   (iv) The action required to reduce the force necessary to fully open this door is easily accomplishable and able to be carried out without much difficulty or expense.

p.   (i) In the women's restroom in Petsmart, a door pull is not provided on both sides of the door near the latch to the accessible toilet compartment.   (ii) A door pull is not provided on both sides of the door near the latch to the accessible toilet compartment, in violation of Federal Law 2010, ADAAG § 604.8.1.2.   (iii) Due to the lack of a door pull on both side of the door to the accessible toilet compartment, the Plaintiff had difficulty operating the door.   (iv) The action required to install a door pull on both side of the door is easily accomplishable and able to be carried out without much difficulty or expense.

q.   (i) In the accessible toilet compartment in the women's restroom in Petsmart, the rear wall grab bar does not extend 12 inches minimum on one side from the centerline of the toilet and 24 inches minimum from the other side from the centerline of the toilet.   (ii) The position of this rear wall grab bar is in violation of Federal Law 2010, ADAAG § 604.5.2.   (iii) Due to the position of this rear wall grab bar, the Plaintiff had difficulty using it to transfer himself from his wheelchair to the toilet.   (iv) The action required to relocate this rear wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

r.   (i) In the women's restroom in Petsmart, the centerline of the where the toilet paper is dispensed from the toilet paper dispenser is not between 7 and 9 inches from the

front of the toilet.   (ii) The centerline of where the toilet paper is dispensed from the toilet paper dispenser is not between a minimum of 7 inches and a maximum of 9 inches from the front of the toilet, in violation of Federal Law 2010, ADAAG § 604.7.   (iii) Due to the location of where toilet paper is dispensed, the Plaintiff could not reach toilet paper from this dispenser from a normal sitting position on the toilet.   (iv) The action required to install a dispenser so that the centerline of where the toilet paper is dispensed is between 7 and 9 inches from the front of the toilet is easily accomplishable and able to be carried out without much difficulty or expense.

    s.   (i) In the women's restroom in Petsmart, the coat hook is higher than 48 inches above the floor.   (ii) This coat hook is higher than 48 inches above the finish floor and is as high as about 55 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.4.   (iii) The Plaintiff observed the height of this coat hook above the floor, and it deters him from shopping at Petsmart.   (iv) The action required to relocate this coat hook is easily accomplishable and able to be carried out without much difficulty or expense.

    t.   (i) In the women's restroom in Petsmart, the liquid soap dispenser outlet is higher than 48 inches above the floor.   (ii) The outlet to this liquid soap dispenser is higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.1.   (iii) Due to its height above the floor, from his wheelchair, the Plaintiff could not obtain soap from this outlet on his own.   (iv) The action required to relocate this liquid soap dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

49.    All of the foregoing violations are also violations of the 1991 Americans with

Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

50. The discriminatory violations described in paragraph 48 are not an exclusive list of the Defendants' ADA violations. Plaintiff requires the inspection of the Defendants' places of public accommodation in order to photograph and measure areas to which barriers prevented his access.

51. The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendants' building and its facilities, and have otherwise been discriminated against and damaged by the Defendants because of the Defendants' ADA violations, as set forth above. The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

52. Defendants have discriminated against the individual by denying individuals access to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.

53. Furthermore, the Defendants continue to discriminate against the Plaintiff, and all those similarly situated, by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

54. Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendants, a remedy in equity is warranted.

55. Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendants pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

56. Defendants are required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendants' places of public accommodation since January 26, 1992, then the Defendants are required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendants' facilities are ones which were designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendants' facilities must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

57. Notice to Defendants is not required as a result of the Defendants' failure to cure the violations by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendants.

58. Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendants to alter the Market Square, Petsmart, and the parking lot, access aisles and walkways to make those facilities readily accessible

and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facilities until such time as the Defendants cure their violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

a. The Court issue a Declaratory Judgment that determines that the Defendants at the commencement of the subject lawsuit are in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b. Injunctive relief against the Defendants including an order to make all readily achievable alterations to the facilities; or to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendants to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c. An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

d. Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff, Fred Nekouee, by and through his undersigned counsel, hereby designates Denver, Colorado as the place of trial for this action.

                Respectfully submitted,

                s/Robert J. Vincze_____
                Robert J. Vincze (CO #28399)
                Law Offices of Robert J. Vincze
                PO Box 792; Andover, Kansas 67002
                Phone: 303-204-8207
                Email: vinczelaw@att.net

                *Attorney for Plaintiff Fred Nekouee*